**Gary McKNIGHT, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

No. 87–C–0248.

United States District Court, E.D. Wisconsin.

Jan. 31, 1989.

Robert J. Gingras, Fox, Fox, Schaefer & Gingras, Madison, Wis., for plaintiff.

Foley & Lardner by Maureen A. McGinnity and Lawrence T. Lynch, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

Commencing on October 3, 1988, a jury trial was held on the plaintiff's claims, pursuant to 42 U.S.C. § 1981 and Title VII, that the defendant unlawfully discharged him from his employment at A.C. Sparkplug because of his race and in retaliation for his prior complaints of race discrimination. The jury returned a verdict in favor of the plaintiff on both the discrimination claim and the retaliation claim. The jury awarded $110,000 in compensatory damages and $500,000 in punitive damages.

The defendant has now filed motions after verdict seeking: (a) a judgment notwithstanding the verdict; or in the alternative, (b) an order amending the judgment to strike the award of punitive damages and reduce the amount of the compensatory damages; and (c) a new trial on various grounds. The plaintiff has filed a post verdict motion to amend the judgment to provide for his reinstatement to his prior job or to a comparable position. For reasons stated herein, the defendant's several motions will be denied, as will the plaintiff's motion for reinstatement.

Motions for a judgment notwithstanding the verdict are to be weighed by the following legal standard:

> Such a motion should be denied "where the evidence, along with inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions." *Smith v. J.C. Penney Company*, 7 Cir., 1958, 261 F.2d 218, 219.

*Rakovich v. Wade*, 850 F.2d 1180, 1188 (7th Cir.1988) (en banc) (quoting *Valdes v. Karoll's Inc.*, 277 F.2d 637, 638 (7th Cir.1960)).

In deciding whether the evidence is sufficient to satisfy this standard, the district court is not to weigh the evidence or judge the credibility of the witnesses nor substitute its own judgment of the facts for that of the jury. *Rakovich, supra,* 850 F.2d at

1187–88. The district court, however, should consider whether the evidence to support the verdict is substantial; "a mere scintilla of evidence will not suffice." *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1410 (7th Cir.1984).

I find that there was ample credible evidence to support the jury's findings that the defendant discriminated against the plaintiff on the basis of his race, and also, that it retaliated against him for having filed complaints alleging race discrimination. Similarly, there was sufficient evidence to warrant the jury's finding that the defendant took these actions in a malicious, wanton or oppressive manner.

The order of proof in a case such as this is set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1980). Under the prescribed model of proof, the plaintiff must first establish a prima facie case. To do this the plaintiff must (1) prove that he is a member of a protected class, (2) prove that he was discharged, and (3) produce sufficient evidence of disparate treatment that the court can infer a causal connection between his protected class membership and the discharge. Similarly, in order to establish a prima facie case of retaliation, the plaintiff must show that: "(1) he has engaged in statutorily protected activity; (2) that the employer has taken adverse employment action; and (3) a causal connection exists between the two." *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600 (11th Cir. 1986).

The prima facie case serves the function of eliminating the most common non-discriminatory reasons for the employer's adverse action against the plaintiff, giving rise to a legally mandatory presumption of intent to discriminate on a prohibited basis. *Burdine, supra*, 450 U.S. at 254 n. 7, 101 S.Ct. at 1094 n. 7. The burden then shifts to the employer to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the discharge. *Id.* The burden then shifts back to the plaintiff to prove that the articulated reason is pretextual. This may be accomplished directly by persuading the trier of fact "that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine, supra*, 450 U.S. at 256, 101 S.Ct. at 1095. If the articulated reason is shown to be pretextual, then the initial presumption is in effect resurrected and stands unrebutted.

In *McDonnell Douglas*, the Supreme Court held that in an individual race discrimination case, the employee may focus on employment patterns broader than his own individual case to prove pretext. *Id.* 411 U.S. at 804–05, 93 S.Ct. at 1825–26. An employer's deviation from normal patterns and practices, the subjectivity of the employment evaluation system relied upon by the employer and the racial attitudes of the supervisors in question are generally considered relevant in this regard. *Id;* *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1423 (7th Cir.1986).

In *Burdine* the Supreme Court recognized the significance of credibility judgments by the trier of fact by noting that "there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation" and that "this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual." *Id.* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. Whether the proffered non-discriminatory reason is pretextual may turn on the jury's judgment as to the credibility of the witnesses "because almost every worker has some deficiency on which the employer can plausibly blame the worker's troubles." *Hunter, supra*, 797 F.2d at 1423.

■ The defendant argues that Mr. McKnight was fired because he did not meet the employer's legitimate job performance expectations. G.M. presented the testimony of numerous management personnel who held supervisory responsibil-

ities over the plaintiff, along with the results of various personnel appraisals that evaluated the plaintiff in a negative manner. G.M. argues that the volume of this evidence was "overwhelming" and that Mr. McKnight did not provide a scintilla of evidence to prove that the allegations of employment performance deficiencies were pretextual. On the contrary, I find that the jury was presented with substantial evidence, which, if believed, would show that the defendant's proffered explanation of poor job performance was pretextual.

First, the jury received the testimony of the plaintiff's expert on personnel practices. Dr. Dresang opined that the subjectivity of G.M.'s employee appraisal system is such that it does not provide reliable evidence of poor performance. Second, the motives of a number of the defendant's witnesses who had supervisory responsibility for the plaintiff were effectively impeached. Some examples: one of the plaintiff's supervisors told racial jokes, using the word "nigger;" one of the plaintiff's supervisors was coerced into reducing an evaluation of Mr. McKnight's work performance; a former manufacturing superintendent provided an affidavit to the effect that the plaintiff's immediate supervisor wanted to terminate the plaintiff's employment for reasons unrelated to his job performance; and several black employees testified that they were concerned about how black employees were treated by Mr. McKnight's immediate supervisor. Third, assuming the validity of the defendant's negative appraisal of the plaintiff's job performance, there was evidence that the plaintiff was treated differently than others with similar performance problems.

Substantial evidence was offered by Mr. McKnight in support of his claim of retaliation. For example, Thomas Cassini admitted that the plaintiff's past litigation against the company was discussed in the meeting at which it was decided to fire the plaintiff; the plaintiff's immediate supervisor was told that he "must" document everything about the plaintiff because of the pending litigation; Mr. McKnight was referred to by a supervisor as a "hot potato" because of his litigation; there was evidence that supervisory personnel were upset with the plaintiff because he had filed complaints against the company; there was evidence that the plaintiff's assignment to "line 6" was retaliatory and designed to pave the way for his termination; and there was evidence that a supervisor repeatedly asked Mr. McKnight to sign a release for his complaint against the company and that this supervisor told him that his career at G.M. would be damaged if he did not sign.

The foregoing examples, along with other similar evidence offered at trial, are sufficient when viewed in the light most favorable to the plaintiff to have enabled the jury to reach the conclusion that the explanation offered by the defendant was pretextual. The findings of fact of the jury will not be disturbed.

The defendant's motion for a new trial is based on the following grounds: (a) that the jury's verdict is contrary to the great weight of the evidence; (b) that the defendant was denied a fair trial because of erroneous evidentiary rulings, the imposition of time constraints by the court, and alleged misconduct by the plaintiff's counsel; and (c) that the size of the damage award evinces bias and passion on the part of the jury which necessarily must have infected its determinations as to liability.

The authority to grant a new trial generally rests within the trial court's discretion. *Allied Chemical Corp. v. Daiflon, Inc.* 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). A new trial is warranted if the verdict is contrary to the clear weight of the evidence, if the damages award is excessive, or if the trial was not fair to the moving party. *General Foam Fabricators, Inc. v. Tenneco Chemicals, Inc.*, 695 F.2d 281, 288 (7th Cir.1982).

The defendant's allegations of misconduct by the plaintiff's attorney are singularly unfounded and merit no discussion.

The defendant lists fifteen evidentiary rulings by the court which it asserts were in error. The defendant wanted the court to limit the evidence to that which concerned the motives of only those

management personnel directly involved in evaluating or supervising the plaintiff during the relevant time period. Such an evidentiary limitation is directly contrary to the approach reflected in *McDonnell Douglas* and would impose insurmountable evidentiary barriers on plaintiffs in this type of case. *See Hunter, supra,* 797 F.2d at 1423. I do not believe that the evidentiary rulings in this case prejudiced the defendant or justify a new trial.

■ The defendant argues that it was not given adequate time to present its case. At the pretrial conference both sides agreed that the trial would take no more than a week, and the court scheduled the case accordingly. Although this was not a complex case, it was tried with great zeal and competitiveness, and as the trial progressed it became very apparent that the presentation of proof was becoming unnecessarily prolonged. The allowable time provided to each side was then modified to accomplish the completion of the trial within the period originally contemplated; however, counsel were expressly informed that additional time would be afforded if the interests of justice required it. Indeed, at G.M.'s request its allowable time was in fact extended near the end of the trial. G.M. never made an offer of proof as to what evidence it was unable to introduce and failed to make an objection as to the time allocations. *Johnson v. Ashby,* 808 F.2d 676, 678 (8th Cir.1987). In my opinion, G.M. was afforded a full and adequate opportunity to present its case, and my exercise of control over the length of the trial did not impinge on the defendants receiving a fair trial.

■ The jury's award of $55,000 for lost wages and fringe benefits was reasonable. The plaintiff earned wages of $32,000 for the eleven months that he worked for the defendant in 1983. After his discharge, Mr. McKnight earned $12,600 in 1984; $18,000 in 1985; $33,000 in 1986; $55,000 in 1987; and approximately $11,000 in 1988, up until the commencement of the trial. Accounting for lost benefits, projected salary increases and expenses incurred in commuting to Chicago in 1987, the $55,000 award was reasonable.

■ The jury's award of $55,000 for pain, suffering, and physical and emotional distress was also reasonable. A jury's assessment of damages for intangible harms such as humiliation and emotional distress is inherently subjective. I believe that the jury's judgment was amply supported by the evidence. The expert testimony of Dr. Lynch showed that the plaintiff suffered anxiety, sleep disorder, headaches and other psychosomatic complaints associated with stress, along with a loss of self-esteem as a result of his termination. The plaintiff was under such stress that just prior to his discharge, he sought psychiatric counseling. Dr. Lynch also testified that the plaintiff suffered a greater degree of emotional distress as a result of his termination than did the typical victim of unjust termination; this was because of the degree of investment that the plaintiff had made in terms of time and commitment to the defendant. Under these circumstances, an award of $55,000 is consistent with past awards for emotional distress in race discrimination cases under § 1981. *eg. Foster v. MCI Telecommunications Corp.,* 555 F.Supp. 330 (D.C.Colo.1983) ($50,000); *Fisher v. Dillard University,* 499 F.Supp. 525 (E.D.La.1980) ($50,000); *Williams v. Owens–Illinois, Inc.,* 469 F.Supp. 70 (N.D. Cal.1979) ($50,000).

■ In my opinion, the jury's award of $500,000 for punitive damages is also reasonable. This is a case involving deliberate wrong doing by a wealthy defendant. There was ample evidence to enable the jury to conclude that G.M. intentionally retaliated against the plaintiff. An award of punitive damages is appropriate to punish a wrongdoer for its outrageous conduct and to deter others from engaging in similar conduct. *Ramsey v. American Air Filter Co.,* 772 F.2d 1303, 1314 (7th Cir.1985).

In order for an award to constitute meaningful punishment, the jury is permitted to take into account the size and wealth of the defendant. Simply because the amount necessary to constitute punishment and deterrence is sizable does not mean that the

award of punitive damages is a windfall for the plaintiff. In the instant case, the award of punitive damages is not out of proportion to the amount of compensatory damages. It cannot be said that the amount of the award evidences that the jury was motivated by improper reasons, such as prejudice or caprice.

In his motion for reinstatement, Mr. McKnight argues that prevailing Title VII claimants are presumptively entitled to reinstatement. *Donnellon v. Fruehauf,* 794 F.2d 598 (11th Cir.1986). The remedial purposes of the act contemplate that, in order to make the plaintiff whole, reinstatement may be granted. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975). In that case the Supreme Court explained:

> It is true that backpay is not an automatic or mandatory remedy; like all other remedies under the Act, it is one which the courts "may" invoke. The scheme implicitly recognizes that there may be cases calling for one remedy but not another, and—owing to the structure of the federal judiciary—these choices are, of course, left in the first instance to the district courts.

Although the district court's discretion is equitable in nature, its judgment must be guided by the purposes of Title VII. *Id.* The purposes of Title VII are prophylactic:

> [the purpose is] to achieve equality of employment opportunities and to remove barriers that have operated in the past to favor an identifiable group of white employees over other employees. [quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 429–30, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971) ] . . . It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination. This is shown by the very fact that Congress took care to arm the courts with full equitable powers. For it is the historic purpose of equity to "secur[e] complete justice."

*Albemarle, supra,* 422 U.S. at 417–18, 95 S.Ct. at 2371–72.

After balancing all the equities, I am convinced that reinstatement in this case would not advance the purposes of Title VII. The plaintiff asserts that he prefers not to be reinstated in his former position of manufacturing supervisor but rather in a position concerned with corporate finance or investment banking. Further, the evidence at trial established that the plaintiff has changed his career goal from manufacturing management to being a stockbroker. I conclude that the plaintiff does not have a primary interest in the position that he formerly held. At trial it became evident that the relationship between the parties is acrimonious at best and given the management level position involved, reinstatement would probably be unproductive. It is clear that in the instant case the plaintiff has been fully compensated and thereby made whole by the award of compensatory damages, and the defendant has been properly punished by the award of punitive damages. Complete justice requires no more in the context of the remedial purpose of Title VII.

Therefore, IT IS ORDERED that the defendant's motions after verdict be and hereby are denied.

IT IS ALSO ORDERED that the plaintiff's motion for reinstatement be and hereby is denied.