**Gary McKNIGHT, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. 87–C–248.**

United States District Court, E.D. Wisconsin.

July 15, 1991.

Reconsideration Denied Aug. 13, 1991.

Fox, Fox, Schaefer & Gingras by Robert Gingras, Madison, Wis., for plaintiff.

Foley & Lardner by Maureen A. McGinnity and Lawrence T. Lynch, Milwaukee, Wis., for defendant.

## DECISION AND ORDER ON REMAND

MYRON L. GORDON, Senior District Judge.

In 1988, Gary McKnight prevailed on his claim that the defendant, General Motors Corporation, unlawfully discharged him from his employment because of his race and in retaliation for his prior complaints of race discrimination. Mr. McKnight pressed his case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, which is based on the Civil Rights Act of 1866. A jury heard his § 1981 claim, and this court resolved the Title VII dispute. Judgment was entered in the plaintiff's favor in the amount of $610,000.00, plus attorney's fees. Specifically, the jury awarded $55,000.00 in back pay, another $55,000.00 for emotional distress, and $500,000.00 as punitive damages.

This court denied Mr. McKnight's post-trial motion for reinstatement to his former position as a manufacturing supervisor and his alternative request for reinstatement to a different job in a different location but still within the General Motors Corporation. *McKnight v. General Motors Corp.*, 705 F.Supp. 464 (E.D.Wis.1989). The defendant appealed the judgment except for the award of attorney's fees, and the plaintiff appealed that portion of the judgment denying reinstatement.

During the pendency of the appeal, the United States Supreme Court decided *Patterson v. McLean Credit Union*, 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989), which holds that § 1981 was limited to providing redress for unlawful discrimination in the "making and enforcement of private contracts," and specifically held that § 1981 afforded no relief from "problems that may arise later from the conditions of continuing employment."

On appeal, the court of appeals for the seventh circuit decided that *Patterson* should be applied retroactively. *McKnight v. General Motors Corp.*, 908 F.2d 104, 110–11 (7th Cir.1990). The court of appeals directed me to dismiss Mr. McKnight's § 1981 claims. The court also remanded "for reconsideration of his entitlement to

reinstatement (or in lieu thereof to front pay) under Title VII." *Id.* at 117.

■ The first issue raised here by the parties is the scope of consideration on remand. The defendant urges that the reconsideration is limited to the record as it stands; the plaintiff argues that the court should reopen the record to receive additional evidentiary submissions on the questions of reinstatement and front pay.

The instructions from the court of appeals do not expressly or impliedly call for additional evidence. The court's instructions are "to reexamine the issue of reinstatement in light of [the vacation of the punitive damage award] and also in light of our discussion in the preceding paragraph of the circumstances in which denial of reinstatement is appropriate." *McKnight,* 908 F.2d at 116. The court also stated that "on remand the district court may wish to consider not only whether McKnight should be reinstated but also whether, if not, he can and should receive front pay in lieu of reinstatement." *Id.* at 117.

■ Mr. McKnight argues that the change in the law occasioned by the *Patterson* decision had "obvious corresponding impacts on matters litigated in this case." Plaintiff's brief in opposition at p. 2. *Patterson* in no way changed the remedies available under Title VII. Reinstatement and front pay were available when the case was tried and still remain possible remedies under Title VII.

■ I also reject the plaintiff's contention that his current employment situation must be explored in order to resolve the remanded matters. The record was fully established as of the end of the trial, unless there exists a contrary instruction from the appellate court. I cannot find such an instruction in the court of appeals' ruling. Mr. McKnight made his record regarding damages, both past and future, during the trial, and he submitted his case regarding reinstatement in post-trial briefs.

A status conference was held in open court on May 16, 1991. At that time, I heard the parties' positions as to the remanded issues and inquired of the parties whether they wanted to file written memoranda further addressing the issues of reinstatement and front pay. Surprisingly, both sides declined. The defendant did ask for and did receive an opportunity to brief the issue of attorney's fees. The briefs on that one issue have been filed, and the issues remanded by the court of appeals are now ripe for review.

With reference to "the record" in this case, I am constrained to observe that the court of appeals addressed a matter of "trial error" that it acknowledged was not a part of the record. Indeed, it was a matter that the court of appeals expressly recognized was not preserved for appeal and had been waived. Nevertheless, the panel concluded that because of the time limitations which I set, the defendant's witnesses actually "ran" to and from the witness stand. This, the court of appeals stated, created a "spectacle" and a "relay race." It was "unseemly", the court of appeals went on to note. *McKnight,* 908 F.2d at 115.

Unfortunately, in going *dehors* the record, the court of appeals unfairly relied on the partisan representation of General Motors' disappointed trial counsel, whose prized client had suffered an adverse jury verdict of over $600,000. The appellate court's reliance was enhanced because Mr. McKnight's counsel understandably did not contradict that representation. Why, I ask, should plaintiff's counsel expend his valuable, *restricted* time to respond to an issue that was not preserved for appeal? He had to address other issues—ones based on the record—before his red light went on.

I have been a judge of a court of record for 40 years. In no instance, *including* the *McKnight* case, has a witness ever entered my courtroom on the run or exited from the witness stand at such a pace in a matter over which I have presided. The "unseemly spectacle" described in Judge Posner's decision simply did not take place. There was no "relay race."

The court of appeals also asserted that my time limits were imposed "arbitrarily." My decision to set time limitations stemmed from the following circumstances:

On March 5, 1987, this case was filed and was assigned to Judge Thomas J. Curran; he entered a scheduling order on July 20, 1987, in which he stated that the time necessary for trial was "a maximum of three days." Subsequently, the case was randomly reassigned to Judge J.P. Stadtmueller. When I then volunteered to handle it in place of Judge Stadtmueller, the case was about a year and a half old and, on its face, it was an uncomplicated employment discrimination case which should be tried in a maximum of three days.

I conducted a pretrial conference on August 8, 1988, and set the trial to start on October 3, 1988. However, as the two sides geared up for trial, I found that they were crossing swords at every turn. Representing General Motors, the defense team was playing hardball; Mr. McKnight's counsel was equally out for blood. During the rather short period between the pretrial conference and the start of the trial, the volume of filings in this case more than doubled. General Motors submitted an inordinately large number of in limine motions seeking to exclude testimony from various witnesses. For instance, in reference to the deposition of one witness alone, Jacob Johnson, the defendant asked me to resolve over 65 evidentiary objections in advance of trial. Five days before the trial date, the defendant filed a motion for reconsideration of Judge Curran's denial of its motion for summary judgment. His decision on the original motion had been entered on May 12, 1988.

Being unable to agree on the questions to be included in a special verdict, counsel filed widely divergent proposals. They also vigorously disagreed on their proposed substantive jury instructions and submitted separate ones. There were 105 exhibits to be offered in evidence, and pretrial objections were advanced as to most of them.

As the trial date neared, I became increasingly aware of the extraordinary combativeness of counsel. I was firmly convinced that they were turning an acorn into an oak tree right before my eyes. It was my studied opinion that this case could *fairly* be tried in one week; it would need-

lessly have taken far longer than that if counsel had a free rein. After discussing this problem with counsel, I set the time limits. No objections were heard. The time limitations were calmly and deliberately set to meet a clearly demonstrated need; they were not "arbitrarily" imposed. I was fully mindful of the admonitions in *Flaminio v. Honda Motor Co., Ltd.*, 733 F.2d 463 (1984) in setting the time restrictions in advance of the trial and in keeping them flexible as the trial progressed. It is regrettable that the court of appeals elected to buy the version of how this trial was conducted that was sold by General Motors' lawyer. With that said, I turn to the issues at hand.

## I. REINSTATEMENT

The Title VII remedies in a particular case are to be fashioned in such a way as to return the victim of discrimination to the position he would have been in but for the illegal behavior. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372–73, 45 L.Ed.2d 280 (1975). Reinstatement is not a tool to be used by an individual to fulfill his, as yet, unmet employment goals.

The court is to exercise its discretion so as to remedy the discrimination suffered by Mr. McKnight. One such potential remedy is reinstating Mr. McKnight to his former position. This remedy is in keeping with *Albemarle*. However, the remedy sought by Mr. McKnight is to be placed within General Motors in an entirely different job and to be relocated to a new city; that is his clear preference.

"A hiring order is not appropriate unless the person discriminated against is presently qualified to assume the position sought." *Kamberos v. GTE Automatic Electric, Inc.*, 603 F.2d 598, 603 (7th Cir. 1979) (*citing Franks v. Bowman Transportation Co., Inc.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976)). Likewise, reinstatement is not warranted where the position sought is no longer available. *Gaddy v. Abex Corp.*, 884 F.2d 312, 319 (7th Cir.1989). The case at bar does not involve a discriminatory failure to hire or a

discriminatory firing disguised as an elimination of position or a reduction in force. However, the underlying policy is still the same: reinstatement must be feasible. There is no basis to find that Mr. McKnight is presently qualified to assume his preferred position in "corporate finance or investment banking" or that General Motors has such a position available.

The court of appeals' decision surmised that the plaintiff's desire to be reinstated might be motivated by his wish to be bought out. *McKnight*, 908 F.2d at 116. This is not beyond the realm of possibility, especially in light of Mr. McKnight's changed career goals. Given Mr. McKnight's unequivocal desire to be in an entirely different field, reinstatement to his former position is not desirable or realistic.

Mr. McKnight could be reinstated to his former position as a manufacturing supervisor. Would the purposes of Title VII be advanced by such an order? I think not. Mr. McKnight's career goals and aspirations, as presented by his testimony at trial and through his experts, no longer include supervising the manufacture of automobile parts. He wants to be in the financial services industry. Title VII would not be served by placing the plaintiff in a job he does not want. Such a situation would likely cause Mr. McKnight to suffer again from emotional distress. This type of reaction "would ensue independently of any hostility or retaliation by the employer." *Id.*

I am directed to reexamine the issue of reinstatement in light of the fact that the punitive damage award and the compensatory damage award have been vacated. I do not believe that those circumstances change the equation. As stated in the original decision, a primary consideration in denying reinstatement was Mr. McKnight's express desire to work in another field. In ruling on the motions after judgment, I stated in the opinion published at 705 F.Supp. at 469:

> After balancing all the equities, I am convinced that reinstatement in this case would not advance the purposes of Title VII. The plaintiff asserts that he prefers not to be reinstated in his former position of manufacturing supervisor but rather in a position concerned with corporate finance or investment banking. Further, the evidence at trial established that the plaintiff has changed his career goal from manufacturing management to being a stockbroker. I conclude that the plaintiff does not have a primary interest in the position that he formerly held.

That aspect of the case has not been altered by my reconsideration of the issue on this remand. The matters of compensatory and punitive damages awarded for his § 1981 claim, as well as the "acrimonious" employer-employee relationship, were viewed as lesser considerations; I still view them as such.

## II.  FRONT PAY

Is front pay an available remedy under Title VII? Yes. *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1528 (11th Cir.1991); *Carter v. Sedgwick County, Kansas*, 929 F.2d 1501, 1505 (10th Cir. 1991); *Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1449 (9th Cir.1990); *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1159 (6th Cir.1985). This list, while certainly not exhaustive, is representative of the jurisdictions which hold that front pay is available under Title VII when reinstatement is denied.

Is an award of front pay appropriate in the case at bar? No. Mr. McKnight presented evidence to the jury regarding his employment future. The jury reasonably found that Mr. McKnight did not lose future earnings as a result of the discrimination he suffered at the hands of the defendant. Mr. McKnight earned considerably more money after his termination from General Motors. I am persuaded that Mr. McKnight's employment opportunities were not and are not inferior to his employment at General Motors.

## III.  ATTORNEY'S FEES

After the resolution of the post-trial motions, but before the issuance of the appellate mandate, the parties entered into a

stipulation regarding the plaintiff's attorney's fees and costs. Pursuant to that stipulation, this court entered an order amending the judgment to add an award of $57,125.70 as attorney's fees and costs. Although the defendant did not appeal this aspect of the judgment, it now seeks to have the attorney's fee award reduced.

■ I do not consider it appropriate to revisit the attorney's fees award. The United States Supreme Court has stated:

> When a case has been once decided by this court on appeal, and remanded to the Circuit Court, whatever was before this court, and disposed of by its decree, is considered as finally settled. The Circuit Court is bound by the decree as the law of the case, and must carry it into execution, according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.

*In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895).

■ A lower court may decide matters left open by the mandate. *Id.* However, the issue of attorney's fees was not left open by the mandate of the court of appeals. How could it have been left open when the issue was not raised on appeal?

■ Even if I revisited the issue of attorney's fees, I would not disturb the stipulation previously entered by the parties. The amount of attorney's fees and costs was entirely reasonable. This is a case in which the Title VII and § 1981 claims "involve a common core of facts," and the theories cannot be viewed as a series of "discrete claims." *Graham v. Sauk Prairie Police Commission*, 915 F.2d 1085, 1109 (7th Cir.1990). Therefore, the "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.*

Plaintiff's counsel is requested to prepare an appropriate judgment and to submit it to the court after first providing defendant's counsel with a copy.

Therefore, IT IS ORDERED that upon remand from the court of appeals for the seventh circuit, Mr. McKnight's claims under 42 U.S.C. § 1981 be and hereby are dismissed.

IT IS ALSO ORDERED that the defendant, General Motors, motion to limit the scope of reconsideration upon remand to the trial record be and hereby is granted.

IT IS FURTHER ORDERED that after reconsideration, Mr. McKnight's request for reinstatement to a position within the defendant corporation, General Motors, be and hereby is denied.

IT IS FURTHER ORDERED that Mr. McKnight's request for front pay in lieu of reinstatement be and hereby is denied.

IT IS FURTHER ORDERED that the defendant's motion to reduce the award of plaintiff's attorney's fees be and hereby is denied.

IT IS FURTHER ORDERED that each party shall bear its own costs in connection with this order on remand. No additional attorney's fees will be granted in connection with this order on remand.

### ON MOTION FOR RECONSIDERATION

On July 15, 1991, the court issued a "Decision And Order On Remand" in the above-captioned action. In that order, the court ruled: (1) that the plaintiff, Gary McKnight's claims under 42 U.S.C. § 1981 be dismissed; (2) that the defendant, General Motors Corporation's motion to limit the scope of reconsideration upon remand be granted; (3) that Mr. McKnight's request for reinstatement to a position within the defendant corporation be denied; (4) that Mr. McKnight's request for front pay in lieu of reinstatement be denied; (5) that the defendant's motion to reduce the award of plaintiff's attorney's fees be denied; and (6) that each party bear its own costs in connection with the order on remand.

Presently before the court are the following motions:

(1) plaintiff's "Motion For Reconsideration Of Decision And Order On Remand;" and

(2) plaintiff's "Motion For Order Requiring Payment Of Partial Postjudgment Interest And Prejudgment Interest."

Along with these motions, which were filed on August 2, 1991, the plaintiff also filed a "Motion For Expedited Hearing"; this motion was granted, and the hearing was held on August 12, 1991, at 9:30 a.m.

The court of appeals for the seventh circuit has determined that a motion for reconsideration is called for when:

[t]he court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission on the issue to the court. Such problems rarely arise and motions to reconsider should be equally rare.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990).

▆ In his motion for reconsideration, the plaintiff has failed to confront the stringent legal standard for his motion. Instead, the plaintiff requests that the court reconsider its decision as to the scope on remand and reinstatement, but he has failed to assert any new or valid reason warranting the court's undertaking such reconsideration. The plaintiff's basic argument remains as follows: "The question of reinstatement in this case can not be decided fairly and in the interests of justice if the court limits itself to the state of the record at the time of the trial in October of 1988."

There is no suggestion that, on remand, the court "patently misunderstood a party, or made a decision outside the adversarial issues presented to the Court by the parties, or made an error not of reasoning but of apprehension." *See Bank of Waunakee,* 906 F.2d at 1191. On remand, I engaged in a review of the trial record and made an analysis of the submissions of counsel in an effort to comply with the instructions of the appellate court to "reexamine the issue of reinstatement in light of [the vacation of the punitive damage award] and also in light of our discussion in the preceding paragraph of the circumstances in which denial of reinstatement is appropriate." *McKnight v. General Motors Corp.,* 908 F.2d 104, 116 (7th Cir.1990).

As a result of that inquiry, I declined to reopen the record to receive additional evidentiary submissions concerning the plaintiff's current employment situation. Furthermore, at a post-remand status conference held in open court on May 16, 1991, the parties were expressly invited to file written memoranda addressing the issues of reinstatement and front pay on remand. At that time, both parties declined the court's invitation.

Through its motion to reconsider, Mr. McKnight asks the court now to receive additional evidence which he perceives as relevant to the issue of reinstatement. Mr. McKnight asks the court to reexamine its decision in light of his current "desperate" financial situation. He also claims that the two individuals who were instrumental in causing his termination are no longer employed by the General Motors Corporation.

I believe that the court of appeals did not instruct me to reopen the trial and to receive new evidence on the plaintiff's "present condition." Also, I am not convinced that this information was totally unavailable to the plaintiff when the issue was first submitted to the court for consideration. It is arguable that Mr. McKnight presented a "success" story to the jury—electing to impress the jurors with his entitlement to large damages, both compensatory and punitive. He now would reverse his field and seek to demonstrate his impoverished condition at a reopened trial.

Consequently, in view of my understanding of the court of appeal's directions, and in the absence of any cogent reasons to reopen the trial, I decline to change my ruling regarding reinstatement.

The plaintiff next requests that the court issue an order requiring the defendant to

pay postjudgment interest at the rate of fifteen percent pursuant to Local Rule 9, § 9.05, as well as prejudgment interest at a rate that the court deems proper.

■ Plaintiff asserts that he is entitled, under § 9.05 to receive postjudgment interest of 15% on his back pay award. However, § 9.05, which relates to supersedeas bonds, does not purport to create a general entitlement to postjudgment interest. Rather, calculation of post-judgment interest is governed by 28 U.S.C. § 1961, which provides:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

In the present action, the court of appeals affirmed the portion of this court's judgment awarding Mr. McKnight $55,000 as back pay. *See McKnight,* 908 F.2d at 117. Thus, Mr. McKnight is entitled to postjudgment interest on this portion of his judgment, to be calculated as provided under § 1961(a), from the date of entry of the judgment, October 14, 1988. According to the defendant's submissions and statements made in open court at the expedited hearing held on August 12, 1991, General Motors Corporation has paid to Mr. McKnight the sum of $66,496.19 which represented the back pay award ($55,000) plus postjudgment interest of $11,496.19, calculated by applying the interest rate—8.04 percent—in effect as of the entry of judgment. Mr. McKnight has acknowledged the receipt of that payment. Hence, the court is persuaded that the defendant's obligation to pay Mr. McKnight the amount of his judgment plus postjudgment interest, as provided under 28 U.S.C. § 1961(a), has been met.

■ Plaintiff also claims he is entitled to prejudgment interest because he was the prevailing party under Title VII. Although there is no automatic right to prejudgment interest, "Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers." *Loeffler v. Frank,* 486 U.S. 549, 557, 108 S.Ct. 1965, 1970, 100 L.Ed.2d 549 (1988). The decision to award prejudgment interest in a Title VII action is within the discretion of the trial judge and turns upon whether the amount of damages is easily ascertainable. *See United States Equal Employment Opportunity Commission v. Gurnee Inn Corp.,* 914 F.2d 815, 820 (7th Cir.1990).

The plaintiff has not made a timely request for prejudgment interest. The plaintiff failed to make a request for prejudgment interest at trial, and he also failed to challenge the original judgment (which did not provide for prejudgment interest). In fact, the parties stipulated to the total amount of attorneys' fees and costs to be added to the judgment, but the stipulation did not include prejudgment interest. In my opinion, the better exercise of the court's discretion is to deny the plaintiff's belated request for prejudgment interest.

At the expedited hearing held on August 12, 1991, the plaintiff raised (for the first time) the question of added fees for the services of his outside counsel, who rendered legal services in connection with the aforementioned stipulation as to attorney's fees. This court's decision and order on remand dated July 15, 1991, provided: "No additional attorney's fees will be granted in connection with this order on remand." I regard that ruling as an indication that no added fees are to be allowed, and that includes the instant application.

Therefore, IT IS ORDERED that Mr. McKnight's motion for reconsideration of the decision and order on remand be and hereby is denied.

IT IS ALSO ORDERED that Mr. McKnight's motion for an order requiring the defendant to pay postjudgment interest at the rate of 15% pursuant to Local Rule 9, § 9.05, be and hereby is denied.

IT IS FURTHER ORDERED that Mr. McKnight's motion for an order requiring the defendant to pay prejudgment interest

at a rate the court deems proper be and hereby is denied.

IT IS FURTHER ORDERED that Mr. McKnight's request for additional fees for the services of the outside counsel in connection with the stipulation as to attorney's fees be and hereby is denied.