Gary McKNIGHT, Plaintiff–Appellant, Cross–Appellee,

v.

GENERAL MOTORS CORPORATION, Defendant–Appellee, Cross–Appellant.

Nos. 91–2989, 91–2990.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1992.

Decided Sept. 11, 1992.

Kristi L. Browne, James A. Borrasso, Chicago, Ill., John S. Williamson, Jr., argued, Appleton, Wis., Edna Selan Epstein (argued), Chicago, Ill., for plaintiff-appellant.

Lawrence T. Lynch, Maureen A. McGinnity (argued), George D. Cunningham, Foley & Lardner, Milwaukee, Wis., for defendant-appellant.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

BAUER, Chief Judge.

In this appeal, we review for the second time Gary McKnight's claim that he should be reinstated to his employment at General Motors Corporation ("GM"). We first reviewed his claim in 1990, after he won a jury verdict on a 42 U.S.C. § 1981 claim and a judgment under Title VII. *McKnight v. General Motors Corp.*, 908 F.2d 104 (7th Cir.1990) (*"McKnight II"*). On the § 1981 claim, the jury awarded McKnight $55,000 in compensatory damages, $55,000 in back pay, and $500,000 in punitive damages. The jury awarded no damages based on impairment of future earning capacity. On the Title VII claim tried before the court, the judge declined to order GM to reinstate McKnight. The only other relief McKnight requested under Title VII was back pay, which was rendered superfluous by the jury's $55,000 back-pay award. *McKnight v. General Motors Corp.*, 705 F.Supp. 464, 468 (E.D.Wis.1989) (*"McKnight I"*).

We reversed the verdict under § 1981 in light of *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), and remanded those claims to the district court for dismissal. *McKnight II*, at 908 F.2d at 115, 117. We upheld the Title VII verdict, and affirmed

McKnight's back-pay award under that theory. We also directed the court to reconsider its refusal to reinstate McKnight and to determine, if reinstatement was not appropriate, whether McKnight should receive front pay in lieu of reinstatement. *Id.* We direct interested readers to *McKnight I* and *II* for the underlying facts in this case.

On remand, the district court reconsidered its reinstatement order, and again declined to order GM to reinstate McKnight or to award front pay. The court also denied McKnight's motion to reconsider that decision. Written opinions on both decisions were published in *McKnight v. General Motors Corp.*, 768 F.Supp. 675 (E.D.Wis.1991) ("*McKnight III*"). McKnight appeals, arguing that the court abused its discretion in denying the relief he requests. He also contends that the court disobeyed our instructions in *McKnight II* on remand because it did not reopen the record and take evidence on McKnight's then-current financial condition, employment status, and his relationships with existing GM employees. McKnight also argues that he was entitled to prejudgment interest, and that the district court abused its discretion in refusing to award it. On cross-appeal, GM argues that the attorneys' fees award entered after trial pursuant to a stipulation by the parties should be reduced in light of our dismissal of McKnight's § 1981 claims. We shall discuss each claim in turn.

### Reopening the Record

■ We do not believe the district court abused its discretion in declining to reopen the record or in refusing to order reinstatement or front pay. In its initial opinion, *McKnight I*, the district court stated that reinstatement was not appropriate in this case because the relationship between McKnight and GM was acrimonious, and because McKnight preferred not to be reinstated in his former position, but in a corporate finance or banking position. Reinstatement was also inappropriate, it found, because

It is clear that in the instant case the plaintiff has been fully compensated and

thereby made whole by the award of compensatory damages, and the defendant has been properly punished by the award of punitive damages. Complete justice requires no more in the context of the remedial purpose of Title VII.

705 F.Supp. at 469. Based on this language, we found that "the district judge declined to order [reinstatement] because the relationship between McKnight and GM had been poisoned by this litigation and also because the award of $500,000 in punitive damages, on top of the compensatory damages awarded, was remedy enough." *McKnight II*, 908 F.2d at 115.

Because we struck the punitive and compensatory damages, we ordered the district court to reconsider its refusal to order McKnight's reinstatement, or in lieu thereof, to award front pay. Contrary to McKnight's present contention however, we did not order the court to reopen the record and gather new evidence on McKnight's employment status. Our opinion was silent as to whether the record should be supplemented. That decision, together with the decision on the merits, was left to the sound discretion of the trial judge. "A discretionary order will only be set aside if it is clear that no reasonable person could concur in the trial court's assessment." *Tennes v. Commonwealth*, 944 F.2d 372, 381 (7th Cir.1991). "The district court's decision must strike us as fundamentally wrong for an abuse of discretion to occur." *Anderson v. United Parcel Service*, 915 F.2d 313, 315 (7th Cir.1990).

The district judge declined to reopen the record for several reasons. He noted correctly that our opinion did not require it. *McKnight III*, 768 F.Supp. at 678. He also explained that *Patterson* did not alter the remedies available under Title VII. Finally, he noted that McKnight had a full opportunity at trial to present evidence of his past and future damages and had failed to provide any authority for his position that the district judge was required to reopen the record on remand.

McKnight's reliance on *Grafenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1201 (7th Cir.1989) and *Welborn v. Reynolds*

*Metals Co.,* 868 F.2d 389 (11th Cir.1989), for the proposition that the district court was required to reopen the record because of our remand, is misplaced. A district court's duties on remand are governed by the opinion ordering it. As Black's dictionary defines it (and as we used the term in *McKnight II*), "reconsideration implies reexamination, and possibly a different decision by the entity that initially decided it." Black's Law Dictionary 1272 (6th ed. 1990). Although the district court in *Grafenhain,* reopened the record to determine the amount of front pay, as GM points out, it only did so after it determined based upon the trial record that front pay was appropriate. *Id.* at 1202. This is an important distinction—in *Grafenhain,* the amount of the award was determined in light of a reduction-in-force instituted by the defendant shortly after the plaintiff was wrongly discharged. Because the court found that the plaintiff would have lost his job for legitimate reasons during the RIF, it awarded front pay only for the period between the plaintiff's termination and the RIF. *Id.*

Similarly, in *Welborn,* the Eleventh Circuit reversed the district court's judgment that the plaintiff had failed to establish a *prima facie* case of discrimination. 810 F.2d 1026, 1028 (11th Cir.1987). It remanded the case, and the district court reinstated the plaintiff but awarded back pay of only $1.00 because it found the plaintiff failed to present sufficient evidence at trial to support a larger award. The district court declined to receive additional evidence on back pay, either relating to the pre-trial or post-trial period. *Welborn,* 868 F.2d at 391. The Eleventh Circuit held that the district court could refuse to hear further evidence relating to the pre-trial period, but that it abused its discretion in refusing to hear evidence supporting a back-pay award from the time of trial until the plaintiff's reinstatement. *Id.* The court

explained that there was no way for the plaintiff to present evidence at trial of her post-trial back-pay damages. Because Title VII is designed to make victims of discrimination whole, claimants are generally entitled to back pay from the date of the adverse employment action until reinstatement. Thus, the plaintiff should have been allowed to present evidence for the post-trial period. *Id.* at 391. The court also held that the plaintiff should have been allowed to present evidence on her reinstatement status. *Id.* But these rulings governed a proceeding where the appellate court reversed the trial court's judgment in favor of the defendant, and imposed liability. Because of its earlier judgment, the trial court in *Welborn* never evaluated the amount of back pay to which the plaintiff was entitled or to what position she should be reinstated. On remand, then, the court was required to evaluate what damages would make the plaintiff whole at the time the damages were awarded.

In this case, our remand was not based upon a reversal of the district court's evaluation of the facts at trial. Rather, because we vacated the § 1981 damages and questioned the completeness of the district court's explanation of its decision to deny reinstatement, we asked the district court to reconsider whether McKnight needed to be reinstated or given front pay to be made whole. This ruling did not require the district court to reopen the record, and we do not believe the court abused its discretion in refusing to do so.

*Reinstatement & Front Pay*

■ As to the merits of the district court's refusal to reinstate McKnight, or to award front pay, we again note that this decision is consigned to the sound discretion of the district court. *Tennes v. Commonwealth,* 944 F.2d 372 (7th Cir.1991); [1] *Grafenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1201 (7th Cir.1989). "Under an

---

1. When we evaluate the relief awarded by the district court, we may look to both Title VII and ADEA (Age Discrimination in Employment Act) cases. As we pointed out in *Syvock v. Milwaukee Boiler Manufacturing Co., Inc.,* 665 F.2d 149, 162 n. 19 (7th Cir.1981), although Title VII and ADEA cases are "not necessarily automatically

interchangeable in establishing the existence of discrimination, both Title VII and ADEA vest trial courts with a similar broad discretion in awarding such legal or equitable relief as the courts deem appropriate." *Id.* (comparing 42 U.S.C. § 2000e–5(g) (1976) with 29 U.S.C. § 626(b) (1976)).

abuse of discretion standard, the proper inquiry is not how the reviewing court would have ruled if it had been considering the case in the first place, but rather whether any reasonable person could agree with the district court." *Id.* at 1201; *see also EEOC v. Gurnee Inn Corp.*, 914 F.2d 815 (7th Cir.1990).

> Although reinstatement is usually the preferred remedy, reinstatement is not always required. The decision regarding reinstatement is within the discretion of the district court, and several factors may persuade the district judge after careful consideration in a particular case that the preferred remedy of reinstatement is not possible or is inappropriate.

*Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1330 (7th Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700, *vacated on other grounds*, 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223, *on remand*, 860 F.2d 834 (7th Cir.1988). In *Coston*, the two factors relied upon by the district court were hostility which it believed made reinstatement futile, and the lack of an available position for plaintiff. 831 F.2d at 1330. We also noted that genuine employer dissatisfaction with an employee's job performance is another factor for a court to consider in its determination whether reinstatement is appropriate. *Id.* at 1332. Nevertheless, we stated that we are "cognizant of the legitimate concern that the hostility common to litigation not become an excuse to avoid ordering reinstatement on a general basis...." *Id.* at 1330. In *Tennes*, we affirmed the court's refusal to reinstate because we found the district court's determination that "there is no reason to believe the parties would enjoy a productive and amicable working relationship," and that the plaintiff "would not enjoy the confidence or respect of current management" was reasonable. *Tennes*, 944 F.2d at 381. The district court also declined to award front pay in part because the amount would be "too speculative" due to a high turn-over rate for other employees and because of the plaintiff's weak employment history in general and with the employer in particular. *Id.*

■ The jury refused to award McKnight damages for "loss of future earning capacity" caused by GM's discrimination. *See* Special Verdict at 2, Rec. Doc. 83. A jury's verdict, when § 1981 and Title VII claims are tried simultaneously, binds the judge on factual issues common to both claims. *Daniels v. Pipefitters Association*, 945 F.2d 906, 923 (7th Cir.1991) (citing cases), *cert. denied*, —— U.S. ——, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992). Therefore, we believe the trial judge was bound by the jury's determination that McKnight suffered no impairment of his future earning ability. Damages for impaired future earning capacity are generally awarded in tort suits when a plaintiff's physical injuries diminish his earning power. *See, e.g., Johnson v. Director*, 911 F.2d 247 (9th Cir.1990) (worker's compensation), *cert. denied sub nom., Todd Pacific Shipyards Corp. v. Director*, —— U.S. ——, 111 S.Ct. 1582, 113 L.Ed.2d 646 (1991); *Gorniak v. National Railroad Passenger Corp.*, 889 F.2d 481 (3d Cir.1989) (FELA suit by railroad employee). We have also affirmed loss of earning capacity awards in employment discrimination cases. *See Morales v. Cadena*, 825 F.2d 1095, 1100 (7th Cir.1987) (affirming award based on jury's consideration of plaintiff's emotional turmoil, depression, and career disruption). To recover for lost earning capacity, a plaintiff must produce "competent evidence suggesting that his injuries have narrowed the range of economic opportunities available to him.... [A] plaintiff must show that his injury has caused a diminution in his ability to earn a living." *Gorniak*, 889 F.2d at 484. Thus, the jury determined that McKnight's ability to earn from the time of trial onward was not impaired.

■ The trial court held that reinstatement was not appropriate because McKnight asked for a "completely different job and to be relocated in a new city." *McKnight III*, 768 F.Supp. at 679. The court found no basis to conclude that McKnight is qualified to perform the job he requests or that there is a position available. *Id.* at 680. Moreover, because McKnight's career goals have changed, the district court did not believe Title VII's

purposes would be served by putting McKnight in a job "he does not want." *Id.* McKnight challenges this factual finding, and argues that the court should have considered his present "desperate" financial condition. The court noted the possibility that McKnight requests reinstatement to force GM to buy him out. As we pointed out, such motivation is a valid reason for denial. *McKnight II,* 908 F.2d at 116. Finally, the court stated that the compensatory and punitive awards did not influence his initial decision not to reinstate McKnight given the change in career goals McKnight presented at trial. The court also repeated his concerns about the acrimonious relationship between the parties. *Id.* We cannot find that the district court abused his discretion in basing his refusal to reinstate McKnight on these factors.

McKnight relies on *Ellis v. Ringold School District,* 832 F.2d 27 (3d Cir.1987), *cert. denied,* 494 U.S. 1005, 110 S.Ct. 1298, 108 L.Ed.2d 475 (1990), to challenge one of the district court's reasons for declining to reinstate him. At trial, McKnight presented extensive evidence that after his discharge, he changed his career and became a stockbroker. *McKnight I,* 705 F.Supp. at 469. Moreover, in his post-trial motion for reinstatement, McKnight stated that he preferred to be reinstated to a position as a corporate finance portfolio manager or analyst in GM's New York office. *See* Plaintiff's Reply Brief in Support of his Post–Verdict Motion for Reinstatement, Rec. Doc. 92, at 3–4. As we have noted, when the district court reconsidered McKnight's reinstatement, it relied in part upon this career change to refuse to reinstate McKnight to his position as a manufacturing supervisor. *McKnight III,* 768 F.Supp. at 680. The court also expressed concern over McKnight's ability to assume a position managing GM's corporate finances. *Id.*

In *Ellis,* after her discharge the plaintiff, a school teacher, worked for higher pay in a munitions factory for two years, then taught for a semester at a private school, and finally took a job as a janitor. 832 F.2d at 29. The district court did not discuss the plaintiff's request for reinstate-ment in its order, and the defendant argued on appeal that the plaintiff's decision to work in industry meant that she was not entitled to reinstatement as a teacher. *Id.* at 30. The Third Circuit noted that this "argument would have greater force if, in fact, the court had denied reinstatement." *Id.* Moreover, the court explained that "[s]tanding alone, the fact that a plaintiff takes a job in an unrelated field to meet her obligation of mitigation should not be construed as a voluntary withdrawal from her former profession." *Id.* The plaintiff asked to be reinstated to her former position as a teacher, which distinguishes *Ellis* from the situation in the case at bar.

Further, in this case, the district court did consider and deny McKnight's request for reinstatement, and McKnight did more than take a job in an unrelated field. He testified at trial that he had become a stockbroker, and in his post-trial pleadings requesting reinstatement, expressed a preference for a job in his new field. The district court denied front pay on remand in part because the jobs McKnight held after his discharge from GM paid more. *See* 768 F.Supp. at 680; *see also* discussion of McKnight's post-GM employment history, *infra* at 1372.

■ Damages in employment discrimination cases are not intended to insure a plaintiff's future financial success. "Damages should ordinarily extend only to the date upon which 'the sting' of any discriminatory conduct has ended." *Smith v. Great American Restaurants, Inc.,* 969 F.2d 430, 439 (7th Cir.1992) (quoting *Syvock v. Milwaukee Boiler Manufacturing Co., Inc.,* 665 F.2d 149, 160 n. 14 (7th Cir.1981)). In fact, in *Syvock,* we approved the district court's determination that

> A proper cutoff time for a damage assessment in this case should be the day when the wounds of discrimination should have healed. In this case it is certain that the sting of any discriminatory conduct ended, or should have ended, substantially in advance of the date the trial on damages commenced.

665 F.2d at 160 n. 14. McKnight presented himself to the jury as a successful stockbroker, and at the time of trial he was employed as a broker by Gruntol Corporation. Gruntol paid McKnight $12,840 in wages between April and August 1988. *See* Trial Transcript ("Tr.Trans."), Vol. IV–B at 48–49. McKnight kept this job until December of 1988. Affidavit of Gary McKnight, Rec. Doc. 146, at 1. Before he worked for Gruntol, McKnight told the jury that he worked as a broker for another company, Oppenheimer & Co., for approximately a year and a half. He earned about $54,000 from Oppenheimer in 1987. Tr.Trans. Vol. IV–B at 41. While he worked at GM, McKnight earned $32,000 a year. *McKnight I*, 705 F.Supp. at 468.

Based on this evidence, the court could have found that the sting of discrimination had ended by the time of trial. In any event, the jury did find that McKnight's future earning ability was not impaired. The district court also looked to this evidence when he denied reinstatement and front pay. He explained that "it is arguable that Mr. McKnight presented a 'success' story to the jury—electing to impress the jurors with his entitlement to large damages, both compensatory and punitive. He now would reverse his field and seek to demonstrate his impoverished condition at a reopened trial." *McKnight III*, 768 F.Supp. at 682. Here, through reinstatement or a front pay award, McKnight appears to be attempting to force GM to insure his future employment success. At trial he presented evidence that he had made a successful career change. Now, he presents evidence that he has had trouble keeping jobs since then. McKnight Affidavit, Rec.Doc. 146, at 1–2. Nevertheless, as we have explained, "You cannot just leave the labor force after being wrongfully discharged, in the hope of someday being made whole by a judgment at law." *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1426 (7th Cir.1986). McKnight's plea for help from his "desperate" financial decision does make us question whether he expects GM to ensure his future employment success. *See* Brief in Support of Plaintiff's

Motion for Reconsideration, Rec.Doc. 145, and McKnight Affidavit, Rec.Doc. 146.

We also note that when a party fails to provide the district court with the essential data necessary to calculate a reasonably certain front pay award, the court may deny the front pay request. *Coston*, 831 F.2d at 1335, & n. 6. Such information includes the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate. *Id.* Moreover, front pay awards, while often speculative, cannot be unduly so. The longer a proposed front pay period, the more speculative the damages become. *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1056 (7th Cir.1990). Here, McKnight provides no basis for calculating an appropriate award, even for the picture of his employment history he presented at trial. The district court invited the parties to file written memoranda further addressing the issues of reinstatement and front pay at a status conference held shortly after our remand. *See* May 16, 1991 Transcript at 4–5. Both parties declined. McKnight's motion for reconsideration also lacks the data the district court needed to calculate front pay.

Given the speculative nature of front pay in this case, together with McKnight's trial strategy and post-discharge employment history, we do not believe the district court abused its discretion in declining to order his reinstatement or to award front pay.

*Prejudgment Interest*

McKnight also challenges the district court's refusal to order GM to pay prejudgment interest on his back pay award. "An award of prejudgment interest lies within the discretion of the trial court." *Kossman v. Calumet County*, 800 F.2d 697, 702 (7th Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987), *appeal after remand*, 849 F.2d 1027 (1988). In more recent cases, we have cabined that discretion somewhat. "The time has come, we think, to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations." *Gorenstein Enterprises v. Quality Care–USA*,

874 F.2d 431, 436 (7th Cir.1989). "Title VII authorizes pre-judgment interest as part of the backpay remedy in suits against private employers." *Loeffler v. Frank*, 486 U.S. 549, 557, 108 S.Ct. 1965, 1970, 100 L.Ed.2d 549 (1988). "Indeed, the Supreme Court has said that it is a 'normal incident' of relief in Title VII suits." *EEOC v. Gurnee Inn Corp.*, 914 F.2d 815, 819 (7th Cir.1990) (quoting *Loeffler*, 486 U.S. at 558, 108 S.Ct. at 1971). Nevertheless, in *Brooms v. Regal Tube Co.*, 881 F.2d 412 (7th Cir.1989), we refused to grant a plaintiff's request for prejudgment interest because the plaintiff never presented the issue to the district court, and raised it for the first time on appeal. We held that "at a minimum, a party must request the interest in a post-trial motion if he or she has failed to plead the relief in the original complaint." *Brooms*, 881 F.2d at 424 n. 9 (citing *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1298 (7th Cir.1987)).

Here, McKnight did not ask for prejudgment interest until after we remanded the case and the district court entered its decision and order on remand on July 15, 1991. *See* Plaintiff's Motion for Order Requiring Payment of Partial Post–Judgment Interest & Pre–Judgment Interest, dated August 1, 1991, Rec.Doc. 147. This request came almost three years after the district court entered its first judgment, and much later than the plaintiff's request in *Brooms*. McKnight provides no explanation for his tardy motion. This case is clearly distinguishable from *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1298 (7th Cir.1987), where the plaintiff only waited until after the judgment was entered to ask for prejudgment interest. Here, McKnight waited through the district court's first entry of judgment, the appeal to this court, the remand, and entry of a second judgment before asking for interest. This is simply too long. *Brooms*, 881 F.2d at 424. Therefore, we find that the district court correctly denied as untimely McKnight's request for prejudgment interest.

*Attorneys' Fees*

■ GM asks us to set aside the attorneys' fees award entered by the district court. The parties stipulated to the amount of fees prior to the first appeal in this case, and the district court's judgment is based on this stipulation. The district court was entitled to hold GM to the stipulation, absent "manifest injustice" to the parties. *See Grafenhain*, 870 F.2d at 1206; *see also Cates v. Morgan Portable Building Corp.*, 780 F.2d 683, 690–91 (7th Cir. 1985) ("Although stipulations are to be encouraged in order to economize on the costs of litigation, a judge has the power to relieve a party from a stipulation when it is reasonable to do so ..."). The stipulation contemplated the possibility that the judgment might be modified on appeal. *See* Stipulation Regarding Attorneys' Fees, Rec. Doc. 104, at 2. Moreover, GM is a sophisticated litigant, and was represented by experienced counsel during the negotiation and entry of the stipulation. We do not believe the district court abused its discretion when it refused to relieve GM of the stipulation. Moreover, the district court determined that the fee award was "entirely reasonable" because the Title VII and § 1981 claims involved common facts. *McKnight III*, 768 F.Supp. at 681. Although we have ordered courts to reduce attorneys' fees awards in cases where § 1981 awards have been vacated, *Brooms*, 881 F.2d at 412; *Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir.1988), appellate review of an attorneys' fees award is very limited. *Kossman v. Calumet County*, 849 F.2d 1027, 1030 (7th Cir.1988). The district court's holding falls within its sound discretion, and we decline to disturb it.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.