Martin W. BARBOUR, Plaintiff–Appellee,

v.

Mark H. MERRILL, Individually and as Vice President, Support Services; Medlantic Management Corporation, Defendants–Appellants,

Gregory J. Walling, Defendant–Appellee.

and

Consolidated Case No. 93–7223.

No. 93–7219.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 12, 1995.

Decided March 10, 1995.

Order Denying Suggestion for Rehearing En Banc May 16, 1995.

Henry Morris, Jr., argued the cause, for appellants. With him on the briefs was Michael L. Stevens.

Martin W. Barbour, argued the cause and filed the brief, pro se.

Before EDWARDS, Chief Judge,
BUCKLEY and TATEL, Circuit Judges.

TATEL, Circuit Judge:

A jury awarded plaintiff Martin Barbour compensatory and punitive damages after finding that defendants Medlantic Management Corporation and Mark Merrill had violated his rights under 42 U.S.C. § 1981 (Supp. V 1993) by refusing to hire him as Medlantic's Director of Corporate Materials Management because he is African–American. On the basis of the jury verdict the district court awarded Barbour back pay. Merrill and Medlantic appeal the district court's denial of their post-trial motion for judgment as a matter of law. Barbour cross-appeals the district court's calculation of back pay, as well as its refusal to award him either front pay or prejudgment interest on the back-pay award. Barbour also appeals the district court's grant of summary judgment in favor of a third defendant, the head of the search firm Medlantic used. We affirm the district court in all respects except its decision to deny Barbour front pay and prejudgment interest, which we remand for reconsideration.

## I.

Medlantic provides centralized management services for a multi-hospital system in the Washington, D.C. area. In January 1989, Medlantic began searching for a new Director of its department of Corporate Materials Management, to be responsible for organizing and directing Medlantic's purchasing, warehousing, distribution and other supply-related services on behalf of its hospitals. Mark Merrill, Medlantic's Vice President for Support Services, supervised the candidate search. He prepared a job description, advertised the vacancy in trade publications, and solicited applications through professional acquaintances and informal channels. The job description stated that Medlantic was seeking someone with "multi-corporate" experience, a "minimum of ten years progressive responsibility in large scale operations," and either an MBA or five years' experience plus a BA.

At the time of the search, Barbour was the Director of Materials Management for the Columbia Hospital for Women, one of four hospitals then in the Medlantic system. He also was serving as a member of Medlantic's Purchasing Council, a committee Merrill had created to coordinate the acquisition and use of resources by all of the hospitals in the Medlantic system. Barbour had come to Columbia Hospital approximately two years earlier, after retiring from a twenty-five-year career as an army officer. He held an MBA, and while in the army he had gained extensive experience as a supply coordinator and materials manager in a variety of multi-hospital and other large health services organizations. Upon learning of the Medlantic vacancy, Barbour informed Merrill of his interest in the Director's position and wrote a confirming letter.

From among sixty to seventy applicants, Merrill conducted formal interviews of six, including Barbour. Four of these candidates—Barbour, another applicant from within the Medlantic system who was serving as Medlantic's interim Director of Corporate Materials Management, and two applicants from outside the Medlantic system—then advanced to a second round of interviews with a panel of Medlantic employees. In May 1989, Medlantic offered the position to one of the outsiders, Craig Shoup, a white candidate with no BA but with extensive management experience in a multi-hospital setting and who Merrill testified was a "superstar" and "by far the most qualified candidate." Shoup declined the offer.

Rather than offer the position to Barbour or any of the other remaining candidates, Medlantic hired defendant Gregory Walling, founder and head of an executive search firm, to conduct a new search. When Barbour asked Merrill why Medlantic had not offered the position to him after Shoup declined, Merrill explained that he did not find Barbour qualified and that Medlantic was seeking someone, like Shoup, with significant experience in a multi-hospital setting in the private sector. Barbour told Merrill that he doubted private sector experience was a genuine requirement, given that he had advanced to the final round of interviews of the first search. Merrill asked Walling to consider Barbour again in the second search. Walling interviewed Barbour, but did not rank Barbour among the top candidates he recommended to Medlantic. According to

his written evaluation, he concluded that "Martin [Barbour] has the functional knowledge and capabilities to undertake this position. However, he does not have the multi-system private sector experience that we are ideally seeking." Merrill interviewed three of Walling's top candidates and hired one of them, Terry Rich. Rich is white.

Upon learning that Medlantic had hired Rich, Barbour filed suit, charging Medlantic and Merrill with unlawful employment discrimination in violation of 42 U.S.C. § 1981 and seeking both damages and equitable relief. He subsequently amended his complaint to include Walling as a defendant, adding a charge that Walling conspired with Medlantic and Merrill to violate Barbour's civil rights, in violation of 42 U.S.C. § 1985(3) (1988). The district court granted summary judgment in Walling's favor on the section 1985 claim, but denied the remaining defendants' motion for summary judgment on the section 1981 claim.

Barbour tried his claims for compensatory and punitive damages to a jury and his claims for equitable relief to the court. The jury found that defendants had unlawfully discriminated, awarding Barbour $2,500 in compensatory damages for his emotional suffering and humiliation and $25,000 in punitive damages. The district court denied defendants' motion for judgment as a matter of law. Based on the jury's finding of unlawful discrimination, the district court awarded Barbour back pay of approximately $84,000, calculated from June 1, 1989, the date the court determined Barbour would have commenced employment had Medlantic hired him after Shoup declined the offer, to June 18, 1992, the date of the verdict. The court denied prejudgment interest, and also refused to award front pay. This appeal and cross-appeal followed.

## II.

We first dispose of Barbour's several procedural challenges to defendants' appeal. His argument that defendants' notice of appeal does not meet the jurisdictional requirements of Federal Rule of Appellate Procedure 3(c) because it identifies only the district court's final judgment as the subject of the appeal, without also specifying each of the district court's previous interlocutory orders at issue, has already been rejected. *Barbour v. Merrill,* No. 93–7219, slip. op. at 1 (D.C.Cir. Mar. 18, 1994).

Equally without merit are his claims that defendants' notice of appeal is invalid because the body of the notice fails to name "Medlantic Management Corporation" as a party to the appeal, instead naming its corporate parent, "Medlantic Healthcare Group," and because defendants' appellate counsel, Michael Stevens, entered his notice of appearance on behalf of Medlantic Healthcare Group, rather than Medlantic Management Corporation. As of November 12, 1993, when defendants filed their notice of appeal, the relevant language of Rule 3(c) provided only that a notice of appeal "shall specify the party or parties taking the appeal" and that "[a]n appeal shall not be dismissed for informality of form or title of the notice of appeal." Fed.R.App.P. 3(c) (1993). Barbour relies on the Supreme Court's interpretation of this rule in *Torres v. Oakland Scavenger Co.* for the proposition that because the requirements of Rule 3(c) are mandatory and jurisdictional, "failure to name a party in a notice of appeal ... constitutes a failure of that party to appeal." 487 U.S. 312, 314, 108 S.Ct. 2405, 2407, 101 L.Ed.2d 285 (1988). As *Torres* explains, "[t]he specificity requirement of Rule 3(c) is met only by some designation that gives fair notice [both to the opposition and to the court] of the specific individual or entity seeking to appeal." *Id.* at 318, 108 S.Ct. at 2409. However, in order to reduce the litigation spawned by *Torres,* the Supreme Court subsequently amended Rule 3(c), effective December 1, 1993, to provide that an appeal will not be dismissed for "failure to name a party whose intent to appeal is otherwise clear from the notice" and to permit "an attorney representing more than one party" to describe those parties with terms such as "the defendants." Fed.R.App.P. 3(c) (1994); *see id.,* Advisory Committee's note to 1993 amendment. The amended rule also provides that a notice of appeal may identify the appellants "in either the caption or the body of the notice." Fed. R.App.P. 3(c). The Supreme Court instructed us to apply this new version of the rule retroactively "insofar as just and practicable." *Order of April 22, 1993, Relating to the Amendments to the Federal Rules of Appellate Procedure,* 113 S.Ct. *819* (1993).

We conclude that it is both "just and practicable" to apply the current version of Rule 3(c). At the same time, we note that under either the old or new version, the notice of appeal left no doubt that Medlantic was an appellant. The caption named "Medlantic Management Corporation" as a defendant, and the body of the notice twice employed the plural usage "defendants," which could only have referred to Mark Merrill and Medlantic, the two defendants before the district court at the time of the judgment. *See Milanovich v. Costa Crociere, S.p.A.,* 938 F.2d 297, 298 (D.C.Cir.1991). We are equally confident that despite appellate counsel's entry of an appearance on behalf of "Medlantic Healthcare Group," all parties and the court understood his intention to represent Medlantic Management Corporation. Counsel may have used the wrong name because Barbour's original complaint had named Medlantic Healthcare Group as the institutional defendant, and the docket sheet retained this name even after Barbour had amended his complaint to substitute parties. But after this amendment, references to "defendant Medlantic Healthcare Group" could only have referred to Medlantic Management Corporation. We therefore reject Barbour's procedural claims and turn to the merits of this appeal.

### III.

■ Medlantic and Merrill challenge the district court's denial of their motion for judgment as a matter of law, arguing that Barbour failed to sustain his burden of proof with respect to both his allegation of unlawful discrimination under 42 U.S.C. § 1981 and his request for punitive damages. We review the district court's denial of this motion *de novo,* focusing on whether the evidence was sufficient for a reasonable jury to have reached the challenged verdict. *See Mackey v. United States,* 8 F.3d 826, 829 (D.C.Cir. 1993).

■ Section 1981(a), part of the Civil Rights Act of 1866, prohibits an employer from refusing to hire a person because of race. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975). A plaintiff may establish a violation of this section using the same three-step framework of proof used to establish racial discrimination under Title VII. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989). Under this framework, a plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination by showing that he or she belongs to a racial minority, applied for an available position for which he or she was qualified, was rejected, and that thereafter the employer continued to seek to fill the position. Once established, the prima facie case raises an inference of unlawful discrimination, which the employer may rebut by presenting evidence of a legitimate, nondiscriminatory reason for the employee's rejection. The plaintiff then bears the ultimate burden of persuading the jury of intentional discrimination, and may do so by proving that the defendant's proffered reasons were a pretext for unlawful discrimination. *Id.* at 186–87, 109 S.Ct. at 2377–78; *see Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53 & n. 6, 101 S.Ct. 1089, 1093–94 & n. 6, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

Medlantic and Merrill first maintain that Barbour failed to establish a prima facie case of discrimination because he did not demonstrate that he was qualified for the Director's position. They also argue that, even assuming Barbour established a prima facie case, the evidence of legitimate nondiscriminatory reasons for not hiring him was overwhelming. We disagree.

■ Although defendants argue that Barbour was not qualified because he lacked significant private-sector experience, the jury reasonably could have determined, from the evidence before it, including the original job description and the fact that Barbour progressed to the final round of interviews, that Barbour was qualified and that private sector experience was not an absolute prerequisite. Similarly, after hearing testimony about Barbour's background and experience, about Merrill's assessments of Barbour's abilities, and about Medlantic's decision to hire Shoup notwithstanding his lack of the educational prerequisites Medlantic initially described as required for the job, the jury reasonably could have rejected Medlantic's proffered nondiscriminatory reasons for not hiring Barbour.

■ As Medlantic and Merrill next argue, however, this was not enough. In

light of the Supreme Court's recent decision in *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the jury must also have reasonably concluded that the proffered nondiscriminatory reasons were a pretext *for discrimination* against Barbour. *See id.* at ——, 113 S.Ct. at 2752. But Medlantic and Merrill misconstrue the impact of this requirement, claiming as the central argument of their appeal that because Barbour "failed to introduce even a shred of evidence that even remotely suggests that race played a role" in his rejection, the jury could not have reached this conclusion and therefore the district court improperly denied their motion for judgment as a matter of law. As *Hicks* explained, a factfinder's rejection of the employer's nondiscriminatory reasons, while not sufficient to *compel* a finding of discrimination, nonetheless suffices to *permit* such a finding. *Id.* at ——, 113 S.Ct. at 2749. According to *Hicks,* a plaintiff need only establish a prima facie case and introduce evidence sufficient to discredit the defendant's proffered nondiscriminatory reasons; at that point, the factfinder, if so persuaded, may infer discrimination. *Id.*

Although the Supreme Court issued *Hicks* after the proceedings below, the district court's jury instruction accorded entirely with the principles set forth in that case. The instruction, to which the defendants did not object, read: "The ultimate burden of persuading the jury that the defendants intentionally discriminated against the plaintiff remains at all times with Mr. Barbour." Thus, we must assume that the jury properly evaluated the evidence in reaching a conclusion that *Hicks* makes clear was within its discretion. Because Barbour introduced sufficient evidence for the jury to conclude both that he had proven a prima facie case of discrimination and that Medlantic's proffered reasons were pretextual, the jury could have reasonably concluded that Barbour had proven unlawful discrimination. While we need not speculate about the jury's reasoning, we note that it could have inferred that Medlantic changed its criteria for the second search to disadvantage or even to exclude Barbour, and, in light of Barbour's prima facie case, that Medlantic did so because of Barbour's race. The district court properly denied defendants' motion for judgment as a matter of law on this issue, and we affirm the jury's finding of discrimination under section 1981

and its accompanying award of compensatory damages.

 For similar reasons, we affirm the jury's award of punitive damages. Although defendants are correct that in section 1981 actions, as in section 1983 actions, punitive damages are proper only on a showing of "evil motive or intent, or ... reckless or callous indifference to the federally protected rights of others," *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983) (decided under § 1983); *see Williamson v. Handy Button Mach. Co.,* 817 F.2d 1290, 1296 (7th Cir.1987) (applying same standard under § 1981), their assertion that "not a shred of evidence" supports the imposition of punitive damages rests on a misunderstanding of this standard. An employee's right to employment free from racial discrimination is one of the most widely recognized and protected civil rights. As the Supreme Court has explained, evidence that suffices to establish an intentional violation of protected civil rights also may suffice to permit the jury to award punitive damages, provided the jury, in its "discretionary moral judgment," *Smith v. Wade,* 461 U.S. at 52, 103 S.Ct. at 1638, finds that the conduct merits a punitive award. *See id.* at 51–54, 103 S.Ct. at 1637–39; *Rowlett v. Anheuser-Busch, Inc.,* 832 F.2d 194, 205–06 (1st Cir.1987). No additional evidence is required. *See Smith v. Wade,* 461 U.S. at 53–55, 103 S.Ct. at 1638–39.

 Medlantic and Merrill have conceded that the district court properly instructed the jury on this issue. We are satisfied that the jury's finding of intentional racial discrimination permitted it to find the "evil motive or intent, or ... reckless or callous indifference" required to award punitive damages. *See Rowlett,* 832 F.2d at 205–06. We thus affirm the district court's denial of the motion for judgment as a matter of law on this issue as well.

### IV.

 We next turn to Barbour's cross-appeal, in which he challenges the adequacy of the district court's award of equitable relief. Barbour asserts error with respect to the district court's calculation of back-pay, its denial of prejudgment interest on the back-pay award, and its denial of front pay. We

address these issues in turn, reviewing each only to determine if the district court abused its discretion. *See Lander v. Lujan,* 888 F.2d 153, 156 (D.C.Cir.1989). As we have recently noted, "[we] must consider 'whether the decision maker failed to consider a relevant factor, whether [the decision maker] relied on an improper factor, and whether the reasons given reasonably support the conclusion.'" *Kickapoo Tribe of Indians v. Babbitt,* 43 F.3d 1491, 1497 (D.C.Cir.1995) (quoting *Johnson v. United States,* 398 A.2d 354, 365 (D.C.1979)). We evaluate Barbour's claims in light of the principle that under section 1981, as under Title VII, a district court has wide discretion to award equitable relief. *See Johnson v. Railway Express Agency,* 421 U.S. at 460, 95 S.Ct. at 1720; *Mims v. Wilson,* 514 F.2d 106, 109–10 (5th Cir.1975). The district court should fashion this relief so as to provide a victim of employment discrimination the most complete make-whole relief possible. *See, e.g., Franks v. Bowman Transp. Co.,* 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976); *Mims,* 514 F.2d at 110.

■■■ Barbour's primary challenge to the district court's back-pay calculation is to the court's use of a figure of $70,000 as the salary he would have received had Medlantic hired him. Barbour claims that the court should have used $85,000, the salary Medlantic paid to Terry Rich, whom Medlantic ultimately hired. But Barbour is not necessarily entitled to the identical compensation as Rich. As the district court explained, "Medlantic credibly testified that it based salary offers on an individual's current salary," and Medlantic also testified that it adjusted its offers to compensate for differences in housing prices to attract candidates from outside the Washington area. Rich had to relocate from Pennsylvania, where his previous salary had been in the $60,000 range. Barbour's salary was approximately $40,000, and he did not need to relocate. In view of Medlantic's additional testimony that it would have offered Barbour $65,000 or $70,000, the district court did not abuse its discretion in fixing his lost Medlantic salary at $70,000. *Cf. Nord v. United States Steel Corp.,* 758 F.2d 1462, 1472 (11th Cir.1985) (finding that employees receiving higher salaries than the amount used to calculate plaintiff's back-pay award were not similarly situated).

■■■ Barbour also challenges the district court's refusal to include in his back-pay award a $200 per month car allowance, which Barbour's evidence showed Medlantic had provided to Rich. Although back pay should generally include the value of lost fringe benefits, *see, e.g., Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 145 (2d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1562 (11th Cir.), *cert. denied,* 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986), the plaintiff bears the initial burden of establishing the value of the lost salary and benefits, *see Fleming v. County of Kane,* 898 F.2d 553, 560 (7th Cir.1990). The district court reasonably concluded that Barbour did not meet this burden, as the record contained no evidence explaining, for instance, why Rich received this car allowance, whether it was a regular part of Medlantic's executive compensation package, and whether Barbour would have received it. Instead, Barbour argued only that he should receive precisely the same compensation as Rich. We have already determined that the district court did not abuse its discretion in rejecting this claim. We therefore affirm the back-pay calculation.

■■■ We cannot, however, affirm the district court's denial of Barbour's request for prejudgment interest on his back-pay award. The district court based this denial on Barbour's failure to advance any reasons for prejudgment interest. Yet in view of Barbour's entitlement to make-whole relief and the general remedial principle that "[p]rejudgment interest is an element of complete compensation," *West Virginia v. United States,* 479 U.S. 305, 310, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987), we agree with the Seventh Circuit that prejudgment interest "must be an ordinary part of any award of back pay . . . under § 1981." *Williamson,* 817 F.2d at 1297; *see also Hutchison v. Amateur Elec. Supply, Inc.,* 42 F.3d 1037, 1046 (7th Cir.1994) (citing Seventh Circuit's conflicting pronouncements regarding whether prejudgment interest is required or discretionary and concluding that whatever discretion district court has "is very limited"). Although the Seventh Circuit also explained that "'[o]rdinary' does not imply in-

evitable" and went on to suggest certain circumstances in which a court might properly deny prejudgment interest, *Handy Button,* 817 F.2d at 1297–98, the presumption should run strongly in favor of imposing prejudgment interest. *See, e.g., Saulpaugh,* 4 F.3d at 145; *Green v. USX Corp.,* 843 F.2d 1511, 1530–31 n. 16 (3d Cir.1988), *vacated and remanded,* 490 U.S. 1103, 109 S.Ct. 3151, 104 L.Ed.2d 1015 (1989), *reinstated in relevant part,* 896 F.2d 801, 807 (3d Cir.), *cert. denied,* 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 29 (1990). Accordingly, a district court may exercise its discretion to depart from this presumption only when it provides a justification that reasonably supports this departure. *See Kickapoo Tribe,* 43 F.3d at 1497.

 Medlantic and Merrill's reliance on the principle that prejudgment interest is inappropriate when the amount of the back-pay award is not readily ascertainable, *see, e.g., Handy Button,* 817 F.2d at 1298; *Domingo v. New England Fish Co.,* 727 F.2d 1429, 1446 (9th Cir.1984), does not persuade us to depart from this presumption. While the amount of the back-pay award in Barbour's case may in some ways be less precise than an award calculated from an undisputed salary figure, the amount was neither so imprecise nor speculative that prejudgment interest would constitute a windfall to the plaintiff. On the contrary, once the district court has diligently set a realistic salary figure, as it did in this case, then denial of prejudgment interest renders the equitable relief incomplete in the absence of other factors. *See Handy Button,* 817 F.2d at 1298 (factors that might justify denying prejudgment interest include unexplained delay in filing suit, or a sizeable jury verdict that can only be explained as including the time value of money).

 This brings us to the parties' arguments about the period of time for which Barbour should receive compensation for lost wages. Barbour requested front pay until 2005, the year he expected to retire at the age of 65. Medlantic and Merrill argued that the district court should limit any award of lost wages to the eighteen-month period of Medlantic's initial contract with Rich. The district court properly rejected this argument, instead awarding Barbour back pay for slightly over three years by relying on the presumption that back pay should extend through the date of judgment. But the district court also rejected Barbour's claim for front pay beyond that date, concluding that calculating such an award would require "undue speculation" about the duration of Barbour's future employment. With all due respect to the district court, we cannot affirm this reasoning.

 The presumption that back pay will extend through the date of judgment derives from the related presumption that the employer will then rectify the discrimination by hiring or reinstating the employee. *See, e.g., Shore v. Federal Express Corp.,* 777 F.2d 1155, 1159 (6th Cir.1985). When that preferred remedy is unavailable, front pay is appropriate. *See, e.g., Pitre v. Western Elec. Co.,* 843 F.2d 1262, 1279 (10th Cir.1988). Although Medlantic and Merrill argue for the first time on appeal that Barbour had not requested placement in the Director's position and thus was not entitled to front pay, the record reflects that Barbour did request placement "into a comparable position ... if the Court decides that such relief would make plaintiff whole." *E.g.* Plaintiff's Reply to Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Request for Back Pay and Front Pay, Feb. 1, 1993, at 10. The district court apparently concluded that such relief was not appropriate. The district court thus had the front-pay issue squarely before it.

 As with back pay, the purpose of front pay is "to make a victim of discrimination 'whole' and to restore him or her to the economic position he or she would have occupied but for the unlawful conduct of his or her employer." *Green v. USX,* 843 F.2d at 1531 (internal quotation marks and punctuation omitted); *see, e.g., Pitre,* 843 F.2d at 1279. The plaintiff bears the initial burden of providing the district court "with the essential data necessary to calculate a reasonably certain front pay award," including "the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate." *McKnight v. General Motors Corp.,* 973 F.2d 1366, 1372 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1270, 122 L.Ed.2d 665 (1993); *see Fleming,* 898 F.2d at 560. The defendant remains free to challenge the

award's amount, length, or interest rate, or to establish as an affirmative defense that the plaintiff failed to mitigate damages. *See Fleming*, 898 F.2d at 560.

■ Certain considerations, including whether an award of front pay would be "unduly speculative," may in some circumstances limit the court's discretion. *See, e.g., McKnight*, 973 F.2d at 1372. But a district court should not refuse to award front pay merely because *some* speculation about future earnings is necessary, or because parties have introduced conflicting evidence. Indeed, in other contexts, such as when valuing lost earning capacity in a personal injury case, courts (or juries) routinely engage in some speculation, based on the factual record the parties have established. *E.g., Wheeler Tarpeh–Doe v. United States*, 771 F.Supp. 427, 455–56 (D.D.C.1991), *rev'd on other grounds*, 28 F.3d 120 (D.C.Cir.1994); *see Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). Courts are equally capable of resolving similar uncertainties when awarding front pay to victims of employment discrimination. *See, e.g., Shore v. Federal Express Corp.*, 42 F.3d 373, 378–79 (6th Cir.1994); *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir.1991); *Green v. USX*, 843 F.2d at 1531–32.

■ Although undue speculation may exist in cases in which the plaintiff "provides no basis for calculating an appropriate award," *McKnight*, 973 F.2d at 1372, and perhaps also in certain cases involving multiple plaintiffs or multiple jobs, we perceive no such speculativeness in this case. Barbour established a prima facie case for an award of front pay: He provided the district court with both a proposed salary base for the award and a definite duration for the award. Although Medlantic and Merrill then argued that Barbour had failed to mitigate, and challenged both Barbour's proposed salary base and his claim that he would have remained at Medlantic until retirement, the district court should not have rejected Barbour's front-pay request merely because these issues were contested and required resolution. The court had already weighed the evidence to establish a salary base when it calculated the back-pay award. All that remained was for it to determine the appropriate duration of a front-pay award, *see, e.g., Shore*, 42 F.3d at 376; *Reneau*, 945 F.2d at 871, to incorporate any proper salary increases, and then to determine the award's present value, using an appropriate discount rate.

■ We therefore remand the front-pay issue to the district court for it to determine the amount and duration of relief that will make Barbour whole. Factors that the court may wish to consider include, but are not necessarily limited to: Barbour's age; Barbour's entirely reasonable intention to remain at Medlantic until retirement, had Medlantic hired him; the length of time Medlantic's Directors of Corporate Materials Management typically held that position; how long Rich held that position; the length of time persons in similar positions at other companies generally hold those positions; Barbour's efforts at mitigation (including consideration of the current job market and industry conditions, as well as the amount of time reasonably required for Barbour to secure comparable employment); and whether Medlantic in any other way supported its claim that Barbour would not have remained at Medlantic until his retirement. *See, e.g., Shore*, 42 F.3d at 376–79; *Reneau*, 945 F.2d at 871; *Shore*, 777 F.2d at 1160. We leave to the discretion of the district court whether to hold further evidentiary proceedings on this issue.

## V.

■ Barbour's final challenge is to the district court's dismissal upon summary judgment of his section 1985(3) conspiracy count against Gregory Walling, asserting that Walling failed to meet his burden of establishing the absence of a genuine issue of material fact. We review this issue *de novo*, viewing the record in the light most favorable to Barbour. *See Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 284 (D.C.Cir. 1993).

■ To establish a violation of section 1985(3), Barbour must allege and prove, among other things, that two or more persons conspired to deprive him of the equal protection of the laws or of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3). Barbour seeks to meet this requirement by alleging that during the second search for candidates, Merrill and Walling conspired to deny him the Director's position. In support, he alleges that Walling inter-

viewed him only to deceive him; that Walling knew Medlantic would not hire Barbour, no matter how well-qualified Walling found him; and that Walling viewed Barbour's lack of private-sector experience as a deficiency even though such experience was not a stated requirement for the position. As evidence of these allegations, however, Barbour recites only such innocent facts as Walling's admission that Merrill retained him to search for candidates, that Merrill informed him that Barbour had been a finalist in Medlantic's first search, and that Merrill asked him to interview Barbour to provide Merrill a second opinion. Although a jury reasonably could have attributed improper motives to Merrill for apparently making private-sector experience a determinative factor in the second search, nothing in the record even hints that Walling did anything more than employ in good faith the apparently legitimate employment criteria that his client provided to him. If we permitted these allegations alone to defeat summary judgment, every search firm would be vulnerable to a conspiracy charge in every employment discrimination case. As the district court ably concluded, Barbour's allegations that Walling participated in a conspiracy simply do not suffice to defeat summary judgment.

## VI.

We affirm the district court's denial of defendants' motion for judgment as a matter of law, its calculation of back pay and its dismissal of the conspiracy claim against Walling. For the reasons discussed above, we remand the denial of prejudgment interest and the denial of front pay to the district court for reconsideration.

*So ordered.*

Before: EDWARDS, Chief Judge; WALD, SILBERMAN, BUCKLEY, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, and TATEL, Circuit Judges.

On Appellants' Suggestion for Rehearing En Banc

### ORDER

May 16, 1995

PER CURIAM.

The Suggestion for Rehearing *En Banc* of appellants/cross-appellees has been circulated to the full Court. No member of the Court requested the taking of a vote thereon. Upon consideration of the foregoing, it is

**ORDERED,** by the court *en banc,* that the suggestion is denied.

A statement of Circuit Judge WILLIAMS concurring in the denial of rehearing *en banc,* joined by Circuit Judges SILBERMAN and GINSBURG, is attached.

STEPHEN F. WILLIAMS, Circuit Judge, with whom SILBERMAN and GINSBURG, Circuit Judges, join, concurring in the denial of rehearing *en banc:*

Although the evidence supporting an inference of discrimination seems to me thin to the point of virtual invisibility, such an intensely fact-bound issue is unsuitable for *en banc* review. I do not construe the panel opinion to read *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), as saying that the factfinder is free to find discrimination *in every case* where the plaintiff has established a prima facie case and offered evidence sufficient to disprove the defendant's attempted rebuttal. The Court wrote:

> The factfinders' disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) *may* together with the elements of the prima facie case, suffice to show intentional discrimination.

*Id.* at ——, 113 S.Ct. at 2749 (emphasis added). The word "may" is ambiguous. It might mean that the factfinder is completely free to find discrimination, in the sense that an appellate court could never reverse such a decision on the evidence. Alternatively, it might mean that in some cases the combination will be adequate to sustain a finding of discrimination, in others not, to be determined by the factfinder initially, and the appellate court on review, according to the usual principles. As I understand the panel opinion to adopt the latter view, I find the case to raise no question justifying an *en banc.*