Carole KOLSTAD, Plaintiff,

v.

AMERICAN DENTAL ASSOCIATION, Defendant.

Civil A. No. 94–1578 (TPJ).

United States District Court, District of Columbia.

Jan. 22, 1996.

Joseph Andrew Yablonski, Daniel Brandeis Edelman, Yablonski, Both & Edelman, Washington, DC, for Carole Kolstad.

Bruce Stephen Harrison, Shawe & Rosenthal, Baltimore, MD, for American Dental Ass'n.

*MEMORANDUM AND ORDER*

JACKSON, District Judge.

This Title VII employment discrimination case is presently before the Court on defendant's post-trial motion for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(b), following a jury verdict for plaintiff for $52,718. The plaintiff, in turn, moves for the equitable relief of instatement to the position for which she was rejected by defendant and for an award of her attorney's fees and costs in excess of $175,000. For the reasons to follow both motions will be denied.

I.

In the fall of 1992, defendant American Dental Association ("ADA") selected one Thomas Spangler over plaintiff Carole Kolstad as its new Director of Legislation and Legislative Policy (hereinafter "Director of Legislation") in its Washington, D.C., office, the position being essentially that of chief

lobbyist for the ADA before Congress. Both candidates, then as now employees of the ADA, were deemed eligible insofar as possessing the basic qualifications for the job. The selecting official was Dr. William Allen, the ADA's interim Executive Director in Chicago, who concluded for himself (with, however, the unanimous concurrence of the incumbent Director of Legislation and all other ADA officials in both Washington and Chicago) that Spangler was the better qualified of the two and notified both candidates of his decision in mid-December, 1992.

Kolstad brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, in July, 1994, alleging that, in selecting Spangler as its new Director of Legislation, the ADA had discriminated against her because of her sex. She sought instatement *to the position of Director of Legislation* and an award of money equal to the aggregate of the difference in the salaries she and Spangler have been paid since January of 1993.

The case was tried October 18–26, 1995, to a jury comprised of six women and two men. The jury was expressly instructed prior to their deliberations that they could award plaintiff relief only upon a finding that she had been a victim of gender discrimination. They were further instructed that the ADA's failure to treat her application fairly in any other respect gave no cause for a finding in her favor. On October 26th the jury answered a special interrogatory finding that Kolstad had been discriminated against on the basis of her sex and awarded her $52,718 in damages, representing the pay differential.[1]

## II.

As is often true in Title VII cases, no direct evidence of sex-based *motivation on the part of the ADA* was presented. Such direct evidence as the jury heard was all to the contrary; specifically, each and every

official at the ADA, male and female alike, who had knowledge of the position at stake and the two candidates, and whether or not involved in the selection process, testified that they believed Spangler to be the better qualified, and to have been selected for that reason alone, without regard to sex.

Moreover, the only circumstantial evidence presented favorable to the plaintiff pointed simply to Spangler's "pre-selection," i.e., that Spangler was destined to get the job no matter who else applied. Although ADA witnesses denied it, there is certainly evidence of record from which the jury could have found, as it may well have done, that Spangler had been perceived by the ADA's hierarchy as the heir-apparent to the incumbent Director of Legislation even before the incumbent declared his intention to retire. Kolstad was regarded as both a late entry and an also-ran from the moment she announced her interest in the position. Were pre-selection in itself unlawful, the validity of the jury's verdict would be unquestionable.

What was missing, for present purposes, is evidence even suggestive of, let alone demonstrating, a gender-related factor in the preference exhibited by everyone for Spangler. For aught that appears in this record their genders might have been reversed, or they of the same sex. That one was male, and the other female, is a mere fortuity. There is simply no basis other than *post hoc ergo propter hoc* reasoning to relate Kolstad's rejection for the post to her gender: to wit, Kolstad is female; she was rejected in favor of a "pre-selected" male for a position for which she was qualified; *ergo,* the reason for the "pre-selection" must have been sex.

Plaintiff invokes *dictum* from the Supreme Court's most recent exposition of Title VII law in the case of *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), to the effect that a trier of fact *may* base a finding of discrimination solely on its disbelief of an employer's proffered "legitimate" reason for an adverse em-

---

1. The Civil Rights Act of 1991, 42 U.S.C. § 1981a(c), affords a right to jury trial in Title VII cases for compensatory and punitive damages. Equitable relief, however, remains the province of the Court, including "back pay." *Id.* at (b)(2).

Assuming without deciding that the Court might treat the damage award as representing "back pay" and thus "advisory" only, the Court nevertheless regards it as conclusive under Fed. R.Civ.P. 39(c).

ployment decision, although it is not compelled to do so. *See id.*, at ——, 113 S.Ct. at 2749. Here, Kolstad says, the jury obviously did not believe the ADA's witnesses, all of whom testified that, fairly comparing their credentials, Spangler's recent experience was thought to be more relevant, and that, for congressional lobbying purposes, his writing style was superior to Kolstad's.

*Hicks,* however, involved a non-jury trial, and the holding of the case merely reaffirmed the Supreme Court's seminal formulation of the standard of proof required to present a successful Title VII claim found in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981), namely, that even a finding of "pretext," i.e., that an employer's explanation of a suspect employment decision is disingenuous, is not actionable unless shown actually to have been a pretext *for discrimination.* The *Hicks* court, in reversing a decision of the 8th Circuit that had itself overturned the decision of a district court, sitting without a jury, in favor of a defendant-employer whose professed reasons for dismissing the plaintiff-employee the district judge had nevertheless refused to credit, asserted that "the Title VII plaintiff at all times bears the 'ultimate burden of persuasion.'" *Hicks,* 509 U.S. at ——, 113 S.Ct. at 2749. In other words, "a reason cannot be proved to be 'a pretext for *discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.,* at ——, 113 S.Ct. at 2752 (emphasis in the original).

At least three appellate cases, from the 6th, 11th and 1st Circuits, albeit antedating *Hicks,* have expressly held that, in the absence of proof that a discriminatory motive underlies an adverse employment decision, disbelief of the pretextual reasons given for it cannot alone support a finding of discrimination if the evidence admits of some other—but not unlawful—motivation. *See Goostree v. State of Tennessee,* 796 F.2d 854, 862 (6th Cir.1986); *cert. denied,* 480 U.S. 918, 107 S.Ct. 1374, 94 L.Ed.2d 689 (1987); *White v. Vathally,* 732 F.2d 1037, 1040 (1st Cir.1984), *cert. denied,* 469 U.S. 933, 105 S.Ct. 331, 83

L.Ed.2d 267 (1984); *Clark v. Huntsville City Bd. of Education,* 717 F.2d 525, 529 (11th Cir.1983).[2] If *Hicks* were the only, and the most recent controlling authority, this Court would be reluctant to conclude that the requirement of at least some evidence of an illegal discriminatory animus had been abandoned. Unfortunately, *Hicks* is neither.

In a case directly on point, not yet a year old, and representing for this Court's purposes an authoritative interpretation of *Hicks,* the D.C.Circuit has held that, after a plaintiff's *prima facie* showing, juries, too (at their election, to be sure) may infer unlawful discrimination solely from a rejection of a defendant-employer's professedly innocent explanations as "pretext." *See Barbour v. Merrill,* 48 F.3d 1270, 1277 (D.C.Cir.1995). That, it would appear, is what the instant jury has done, and its verdict must therefore be allowed to stand.

■ Were it open to this Court to set aside the verdict under Fed.R.Civ.P. 50(c), however, the Court would do so. While the evidence may have been sufficient to have convinced the jury that Kolstad's candidacy for the position of Director of Legislation at ADA was treated cavalierly, and Spangler given a preference from the start, it is insufficient to prove *to the Court's satisfaction* that her sex or his more likely than not had anything to do with her rejection. Thus, in the absence of any grounds for action asserted other than the statutory Title VII claim of sex discrimination—Kolstad having made no claim on any other theory—the Court's equitable jurisdiction to complete the relief affords no basis for it to order a remedy for a wrong that it concludes has not been proven, the jury's verdict notwithstanding.

For the foregoing reasons, therefore, it is, this 22nd day of January, 1996,

ORDERED, that the motion of defendant American Dental Association for judgment as a matter of law is denied, and final judgment for plaintiff Carole Kolstad against the defendant in the amount of $52,718 is confirmed; and it is

**2.** All cited by Judge Revercomb in *Slade v. Billington,* 700 F.Supp. 1134 (D.D.C.1988).

FURTHER ORDERED, that the motion of plaintiff Carole Kolstad for an order of instatement to the position of Director of Legislation and an award of her attorney's fees and costs is denied.